

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

September 14, 1993

Honorable Gonzalo Barrientos
Chair
Committee on Nominations
Texas State Senate
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-254

Re: Whether an unincorporated association insurance carrier is eligible to serve as a corporate surety pursuant to V.T.C.S. article 5160.A (RQ-579)

Dear Senator Barrientos:

You have asked us to consider whether, under V.T.C.S. article 5160.A, an unincorporated association insurance carrier may serve as a corporate surety. Your question requires that we reexamine Attorney General Opinion JM-923 (1988) in light of amendments to article 5160.A that the legislature has enacted since 1988.

In Attorney General Opinion JM-923 this office considered whether an unincorporated association insurance carrier organized under the Texas Lloyd's Plan, Insurance Code chapter 18, may serve as a "corporate surety" in providing a performance and a payment bond when required by V.T.C.S. article 5160.A. At that time, article 5160.A provided in pertinent part as follows:

> Any person or persons, firm, or corporation, hereinafter referred to as "prime contractor," entering into a formal contract in excess of $25,000 with this State, any department, board or agency thereof; or any county of this State, department, board or agency thereof; or any municipality of this State, department, board or agency thereof; or any school district in this State, common or independent, or subdivision thereof; or any other governmental or quasi-governmental authority whether specifically named herein or not, authorized under any law of this State, general or local, to enter into contractual agreements for the construction, alteration or repair of any public building or the prosecution or completion of any public work, shall be required before commencing such work to execute to the aforementioned governmental authority or authorities, as the case may be, the statutory bonds as hereinafter prescribed, but no governmental authority may require a bond if the contract does not exceed the sum of $25,000. *Each such bond shall be executed by a corporate surety or corporate sureties duly authorized to do business in this State.* In the case of contracts of the State or a department, board, or agency thereof, the aforesaid bonds shall be

> payable to the State and shall be approved by the Attorney General as to form. In case of all other contracts subject to this Act, the bonds shall be payable to the governmental awarding authority concerned, and shall be approved by it as to form. Any bond furnished by any prime contractor in an attempted compliance with this Act shall be treated and construed as in conformity with the requirements of this Act as to rights created, limitations thereon, and remedies provided. [Emphasis added.]

The opinion emphasized that article 5160.A requires a "corporate" surety to execute a bond. Attorney General Opinion JM-923 at 2.

The opinion also cited article 18.01 of the Insurance Code, which authorizes underwriters to make any insurance, except life insurance, on the Lloyd's plan. *Id.* at 2-3. Article 18.03 included within the meaning of "any insurance" fidelity and surety bonds insurance. *Id.* at 3. As the opinion stated, "by its terms, the Insurance Code authorizes a Lloyd's company to write 'fidelity and surety bonds insurance.'" *Id.*

Noting the apparent conflict between V.T.C.S. article 5160.A, which precluded a Lloyd's company from executing a bond because Lloyd's is not a *corporate* surety, and articles 18.01 and 18.03 of the Insurance Code, which authorized a Lloyd's company to write "fidelity and surety bonds insurance," this office used established principles of statutory construction to conclude that V.T.C.S. article 5160.A controlled. *Id.* The opinion stated:

> As between article 5160.A and the Insurance Code, the special requirement of a corporate surety therefore controls or limits the general authorization of a Lloyd's company to write fidelity and surety bond insurance. Put another way: Although the legislature has authorized Lloyd's companies to write fidelity and surety bond insurance, the legislature requires a corporate surety when public work is concerned.

*Id.*

You point out that the legislature amended V.T.C.S. article 5160.A in 1991. *See* Acts 1991, 72d Leg., ch. 242, § 11.29, at 1067-68. You suggest that this amendment "now allows surety bonds issued by a Lloyd's company, authorized to do business in Texas, to satisfy the requirements of [article] 5160." We disagree.

The 1991 legislation amended the sentence italicized in article 5160.A, quoted *supra*, to provide as follows: "Each such bond shall be executed by a corporate surety or corporate sureties in accordance with Section 1, Chapter 87, Acts of the 56th Legislature,

Regular Session, 1959 (Article 7.19-1, [Insurance Code]).["1] *See generally* Attorney General Opinion DM-165 (1992). The amendment thus substituted for "duly authorized to do business in this state" a reference to article 7.19-1 of the Insurance Code. *See id.* at 4 n.2. Article 7.19-1 provides in pertinent part as follows:

> (a) Whenever any bond, . . . is, by law . . . , required . . . to be made, . . . , and whenever the performance of any act . . . , is required . . . to be guaranteed, such bond . . . may be executed by a surety company duly authorized to do business in this state; and, . . . such execution by such company of such bond . . . shall be in all respects a full and complete compliance with every law . . . that such bond . . . shall be executed by one surety or by one or more sureties, or that such sureties shall be residents, or householders, or freeholders, or either, or both, or possess any other qualification and all courts, judges, heads of departments, boards, bodies, municipalities, and public officers of every character shall accept and treat such bond . . . when so executed by such company, as conforming to, and fully and completely complying with, every requirement of every such law. . . .

> Provided, however, that any municipality may require in any specifications for work or supplies, on which sealed bids are required, that any corporate surety tender shall designate, in a manner satisfactory to it, an agent resident in the county of such municipality to whom any requisite notices may be delivered and on whom service of process may be had in matters arising out of such suretyship.

> (b) If any bond . . . described in Subsection (a) of this section is in an amount in excess of 10 percent of the surety company's capital and surplus, the municipality, board, body, organization, court, judge, or public officer may require, as a condition to accepting the bond, . . . written certification that the surety company has reinsured the portion of the risk that exceeds 10 percent of the surety company's capital and surplus with one or more reinsurers who are duly authorized . . . to do business in this state.

Reading article 7.19-1 by itself, one might conclude that a Lloyd's company, authorized to do business in Texas, may execute a bond required to comply with V.T.C.S.

---

[1]In addition to the 1991 amendments to V.T.C.S. article 5160.A discussed here, the legislature also amended article 5160.A in 1989, *see* Acts 1989, 71st Leg., ch. 1138, § 38, and in 1993, *see* Acts 1993, 73d Leg., ch. 865, § 1. These amendments to the article 5160.A are irrelevant to the resolution of the question you ask.

article 5160.A. Significantly, however, the legislature has not deleted from article 5160.A the requirement that the surety be "corporate." On its face, article 5160.A thus limits to "corporate sureties" the class of sureties duly authorized to do business in this state that may execute a bond under article 5160.A.[2]

We note that the legislature has not amended articles 18.01 and 18.03 of the Insurance Code since the issuance of Attorney General Opinion JM-923. Consequently, we affirm our conclusion in Attorney General Opinion JM-923 that "the legislature requires a corporate surety when public work is concerned." *See* Attorney General Opinion JM-923 at 3. We therefore conclude that an unincorporated association insurance carrier is ineligible to serve as a corporate surety pursuant to V.T.C.S. article 5160.A.

## S U M M A R Y

The conclusion in Attorney General Opinion JM-923 (1988) that "the legislature requires a corporate surety when public work is concerned" is affirmed. Thus, an unincorporated association insurance carrier is ineligible to serve as a corporate surety pursuant to V.T.C.S. article 5160.A.

Very truly yours,

**D A N   M O R A L E S**
Attorney General of Texas

---

[2]We note that the legislature amended article 7.19-1 of the Insurance Code in 1991 to add subsection (b) (among other things) by the same act that amended V.T.C.S. article 5160.A to refer to article 7.19-1. *See* Acts 1991, 72d Leg., ch. 242, § 11.28, at 1067. In Attorney General Opinion DM-165 (1992) this office found that the amendments to articles 5160 and 7.19-1 accomplished three things:

> First, they authorize local officials to obtain information from the Department of Insurance regarding the condition of the surety company's capital and surplus for purposes of determining whether to consider requiring the surety company to obtain reinsurance. Second, article 7.19-1 effectively authorizes political subdivisions to require that corporate sureties secure reinsurance for the portion of any risk that exceeds ten percent of the surety company's capital and surplus. Third, article 7.19-1 requires reinsurers to be "duly authorized, accredited, or trusteed to do business in this state."

*Id.* at 4. In our opinion the legislature intended the 1991 amendment to V.T.C.S. article 5160.A solely to authorize a political subdivision to avail itself of the protections article 7.19-1 provides; thus, we do not believe that the legislature intended by the amendment to remove the requirement in article 5160.A that the surety be "corporate."

p. 1322

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Attorney General for Litigation

RENEA HICKS
State Solicitor

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General